Of Counsel:
CLAY CHAPMAN CRUMPTON IWAMURA & PULICE

ROBERT E. CHAPMAN             #2679
rchapman@paclawteam.com
MARY MARTIN                   #5475
mmartin@paclawteam.com
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Telephone No.: (808) 535-8400
Facsimile No.: (808) 535-8444

Attorneys for Defendants
 CHEVY CHASE BANK and BANK ONE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA D. DEATON,<br><br>    Plaintiff,<br><br>  vs.<br><br>CHEVY CHASE BANK, a corporation, BANK ONE, a corporation and JANE DOES 1-10 and JOHN DOES 1-10, DOE CORPORATION 1-10, and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>    Defendants. | CIVIL NO. CV01-00352 SPK/BMK<br><br>DEFENDANTS' CONCISE STATEMENT OF FACTS; DECLARATION OF MARY MARTIN; EXHIBITS "A" – "D"; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE<br><br>Hrg Date: May 5, 2006<br>Hrg Time: 10:00 a.m.<br>Judge: Samuel P. King<br><br>Trial Date: Oct. 17, 2006 |

**DEFENDANTS' CONCISE STATEMENT OF FACTS**

COMES NOW Defendants CHEVY CHASE BANK, and BANK ONE, "Defendants"), through their attorneys, Clay Chapman Crumpton Iwamura & Pulice pursuant to Rule 56, F.R.C.P., and Local Rule 56.1, and hereby submits their separate

Concise Statement of Facts in Support of their Motion for Summary Judgment which they are filing contemporaneously.

| ¶ | DEFENDANTS' CONCISE STATEMENT | SOURCE[1] |
|---|---|---|
| 1 | In 1993, Ms. Deaton had a credit card with Chevy Chase which she did not use, but for which she was the responsible party. | Exh.A: Tr. 4/16/03, p.119-120, 125; Exh.B: Tr. 4/17/03, p.27-33. |
| 2 | Her friend (Mr. Hariri) used the card; his address, not Ms. Deaton's, was the address on the billing statements. | Id. |
| 3 | Mr. Hariri incurred charges in November 1993 which were duplicated on a billing statement in January 1994. | Exh.A: Tr. 4/16/03, p.119-120, 129. |
| 4 | Ms. Deaton allegedly sought to correct the perceived error. | Exh.A: Tr. 4/16/03, p.119-121. |
| 5 | Her letter contesting the billing was sent, more than 60 days after the statement date, to a street address, rather than the P.O. Box designated for such claims on the billing statement. | Exh.A: Tr. 4/16/03, p.120-121, 124. |
| 6 | Ms. Deaton claimed that the duplicated entry was never corrected, although she did not have any billing statements which would support her oral representations, and she did not bring a legal action to effect a correction, pursuant to the Fair Credit Billing Act. | Exh.A: Tr. 4/16/03, p.136; Exh.B: Tr. 4/17/03, p.35-39. |

---

[1] Exhibits are attached hereto to the Martin Declaration unless otherwise noted.

| | | |
|---|---|---|
| 7 | At Mr. Hariri's insistence, even though she wanted to, she did not close the account when the alleged billing errors occurred. | Exh.A: Tr. 4/16/03, p.135-136. |
| 8 | From 1994 to 1998, Ms. Deaton did not write any further letters to Chevy Chase concerning the alleged errors, which she claimed were never corrected, but contradicted herself as to whether she ever attempted to make telephone calls to Chevy Chase during that period concerning the account. | Exh.A: Tr. 4/16/03, p.136-142. |
| 9 | During the period from mid-1994 through the end of 1998, the billing statements included several late notices and warnings; all of the statements were being sent to Mr. Hariri, at various addresses, but not to Ms. Deaton. | Exh.A: Tr. 4/16/03, p.149-163. |
| 10 | Ms. Deaton's testimony was inconsistent as to whether she even saw any billing statements on the account. | Exh.A: Tr. 4/16/03, p.130-133. |
| 11 | In 1998, she learned that the delinquent status of the credit card account was reflected on her credit report, and that later the account was written off - affecting her credit. | Exh.A: Tr. 4/16/03, p.137-139. |
| 12 | Even learning of the derogatory credit in 1998, Ms. Deaton did not then write to any of the credit reporting agencies, either seeking investigation, nor to ask that a line be inserted stated that the derogatory information was contested. | Exh.A: Tr. 4/16/03, p.170-173. |

| 13 | She claimed that when the account was written off by the credit card companies, that the multiple billing had never been corrected, and that it had multiplied up to the amount that was written off and then appeared on her credit report. | Exh.B: Tr. 4/17/03, p.37-38. |
|---|---|---|
| 14 | In August 1999, she claimed to have initiated proceedings to have the report corrected pursuant to the Fair Credit Reporting Act through a locally based credit reporting agency (Credit Bureau of the Pacific – "CBP") which was affiliated with one of the national agencies. The "reinvestigation" did not inform Ms. Deaton how to add a line to her credit report contesting the entry. | Exh.B: Tr. 4/17/03, p.4-5, 16. |
| 15 | Her claim of damage was that she had been denied an investment opportunity for which she was denied a mortgage, but the evidence did not show that the lender received the Banks' derogatory reporting, as CBP's letter to the lender with credit information did not include any information relevant to these defendants' reporting. | Exh.B: Tr. 4/17/03, p.5-12. |
| 16 | The credit reports indicated many "derogatory" items on Ms. Deaton's report which were not related to the Defendants herein. | Exh.A: Tr. 4/16/03, p.167-173. |
| 17 | In fact, the mortgage was approved, but Ms. Deaton declined to take it. | Exh.B: Tr. 4/17/03, p.17. |

-4-

| | | |
|---|---|---|
| 18 | By the time the instant lawsuit was filed on May 25, 2001, more than 7 years after the alleged failure to correct the credit card account, neither Chevy Chase nor Bank One (its successor) still had billing statements back that far. | Exh.B: Tr. 4/17/03, p.174-175. |
| 19 | In 1999, after the purported inquiry by CBP, Ms. Deaton did not write to any of the CRA's to put a line in her credit report disputing the derogatory information. | Exh.B: Tr. 4/17/03, p.12-17. |
| 20 | In fact, service of the Complaint was not effected until August 2001, at which time the Banks ordered from the computerized archives, all statements relevant to the account. | Exh.B: Tr. 4/17/03, p.174-175. |
| 21 | The Banks were successful in producing chronological statements back to August 1994 (closing date July 1994). | *Id.* |
| 22 | Based on the dates on which Ms. Deaton claimed to have complained about the billing, it would, in the normal course of correcting errors, have been corrected in the billing dated May or June 1994. | Exh.B: Tr. 4/17/03, p.117-120. |
| 23 | The statements prior to August 1994 could not be produced, as they were not in the Banks' archives, and Ms. Deaton did not produce them. | Exh.B: Tr. 4/17/03, p.35-39, 174-175. |
| 24 | However, based on the continuing usage of the card, even if the correction had been made, the account could have grown to the amount written off. | Exh.B: Tr. 4/17/03, p.121-122. |

| 25 | In addition, even if the entries had never been corrected, Defendants demonstrated mathematically, that at the time the account was written off, based on the billing and payment history of the statements from July 1994, there was a delinquency running on the account (the cardholder was not paying off new purchases), even making the presumption that the entire balance forward showing on the July 1994 statement should be disregarded. | Exh.B: Tr. 4/17/03, p.123-128. |
|---|---|---|
| 26 | Based on the records of the credit card reporting agencies TransUnion and Equifax, which were subpoenaed for trial by Ms. Deaton, there were no inquiries by either credit reporting agency (one of which was affiliated with the local agency) to the Defendants in 1999; based on the bank records, no relevant FCRA inquiry occurred in 1999. | Exh.C: Tr. 4/18/03, p.10-12. |
| 27 | Ms. Deaton's counsel made an offer of proof that the request to Credit Bureau of the Pacific would have been directed to Equifax for the FCRA reinvestigation. | Exh.C: Tr. 4/18/03, p. 61-63. |
| 28 | In January 2002, there were inquiries, to which the Bank correctly confirmed that the account had been written off. | Exh.C: Tr. 4/18/03, p.20-21. |
| 29 | Shortly thereafter, and after the instant lawsuit was filed, the bank deleted the "trade-line" in its entirety from the credit report. | Exh.B: Tr. 4/17/03, p.26; Exh.C: Tr. 4/18/03, p.23-25. |
| 30 | In closing argument, Ms. Deaton's counsel opined that there was not any negligence on the part of the bank. | Exh.D: Tr. 4/21/03, p.58. |

DATED:  Honolulu, Hawaii, __3/17__, 2006.

_____
ROBERT E. CHAPMAN
MARY MARTIN
Attorneys for Defendants