ARNOLD T. PHILLIPS II  #6640
1188 Bishop Street, Suite 3003
Honolulu, Hawaii 96813
Telephone: 808-528-3911
ATP@atphillips.com

Attorney for Plaintiff
LINDA D. DEATON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA D. DEATON,<br><br>Plaintiff,<br><br>v.<br><br>CHEVY CHASE BANK, a corporation, BANK ONE, a corporation, and JANE DOES 1-10 and JOHN DOES 1-10, DOE CORPORATION 1-10, and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. CV01-00352 SPK/BMK<br><br>PLAINTIFF'S SEPARATE CONCISE STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT; DECLARATION OF LINDA D. DEATON; DECLARATION OF ARNOLD T. PHILLIPS II EXHIBIT "A" and CERTIFICATE OF SERVICE<br><br>Date: June 30, 2006<br>Time: 10:00 a.m.<br>Judge: Honorable Samuel P. King<br><br>Trial Date: May 1, 2007 |

**PLAINTIFF'S SEPARATE CONCISE STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule of Practice for the United States District Court for the District of Hawaii 56.1, Plaintiff LINDA D. DEATON hereby submits her response to Defendants CHEVY CHASE BANK and BANK ONE's Concise Statement of Facts in Support of their Joint Motion for Summary Judgment and Plaintiff's separate Concise Statement of Material Facts in opposition to Defendants' Motion:

### Plaintiff's Response to Defendants' Concise Statement

| FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. **Accepted** except for the statement "which she did not use" which is Controverted. | Compl. ¶ 3 |
| 2. **Accepted** except for the statement "his address, not Ms. Deaton's was the address on the billing statements. | Compl. ¶ 4 |
| 3. **Accepted** except for the statement "duplicated" unless it means the identical charges were posted four times three times being Defendants' errors | Compl. ¶ 4, Plaintiff's Concise Statement filed June 10, 2002. ¶ 4 |
| 4. **Accepted** except for the words "allegedly" and "perceived" which are controverted | Compl. ¶ 4; Plaintiff's Concise Statement filed June 10, 2002. ¶ 6-11; Deaton Declaration ¶ 6-8 |
| 5. **Accepted** except for the statement "rather than the P. O. Box designated for such claims on the billing statement" | |
| 6. **Controverted** the statement "although she did not have any billing statement which would support her oral representations, and she did not bring a legal action to effect a correction, | Deaton Declaration ¶ 6 – 8 |

2

pursuant to the Fair Credit Billing Act". Plaintiff is not required to bring any action under the Fair Credit Billing Act to be allowed to proceed with an action under Fair Credit Reporting Act 15 U.S.C. § 1681i.

| | |
|---|---|
| 7. **Controverted**. Plaintiff controverts this statement to the extent that there is no support for the portion of the statement which states "At Mr. Hariri's insistence". | Deaton Declaration ¶ 3 – 5 |
| 8. **Controverted**. Plaintiff controverts this statement to the extent that there is no support in the source for the statement "but contradicted herself as to whether she ever attempted to make telephone calls to Chevy Case during that period concerning the account". | Trial Transcript; Deaton Declaration ¶6- 8 and 13 |
| 9. **Controverted** the statements were sent to both Plaintiff and Mr. Hariri and return communication to the Defendants was from both Plaintiff and Mr. Hariri | Plaintiff's Concise Statement filed June 10, 2002.Exhibit 2 and 4 |
| 10. **Controverted**. Plaintiff controverts this statement to the extent that that there is no support in the source for the statement "testimony was inconsistent". | Def. Ex. A Tr. 4/16/03, p. 130-133. |
| 11. **Accepted**. | |
| 12. **Controverted**. Plaintiff controverts this statement to the extent that the she did request an investigation from Credit Bureau of the Pacific regarding the Defendants' reporting error. | Deaton Declaration ¶ 6 – 8 and 11 |
| 13. **Accepted**. | |
| 14. **Controverted**. Plaintiff controverts this statement to the extent that the source does not support the statement "The 'reinvestigation" did not inform Ms. Deaton how to add a line to her credit report contesting the entry." | Def. Ex. B: T. 4/17/03, p. 4-5,16 |
| 15. **Controverted**. Plaintiff controverts this statement the source states that the mortgage company received her credit report with the error prior to her request for a reinvestigation | Def. Ex. B: T. 4/17/03, p. 11 |

| | |
|---|---|
| 16. **Controverted.** There is no definition of "derogatory" in the source and the effect of the Defendants errors on Plaintiff's credit report dwarfed any other entry | Deaton Declaration ¶ 10 |
| 17. **Controverted.** Plaintiff controverts this statement to the extent that the errors on the credit report caused the lender to require a interest rate so high that Plaintiff could not afford to make the loan | Def. Ex. B: Tr. 4/17/03, p.17 Deaton Declaration ¶ 9 and 10. |
| 18. **Controverted.** Plaintiff controverts this statement to the extent that these documents were in existence in May of 2001 and destroyed by the Defendants by August 2001. The destruction took place after they knew of this litigation | Deaton Declaration ¶ 11; Declaration of Arnold Phillips ¶ 4. |
| 19. Accepted. | |
| 20. **Controverted.** Defendants destroyed the account records after they had notice of the litigation according to their document retention policy | Deaton Declaration ¶ 11; Declaration of Arnold Phillips ¶ 4. |
| 21. **Controverted.** Defendants destroyed the account records after they had notice of the litigation according to their document retention policy | Deaton Declaration ¶ 11; Declaration of Arnold Phillips ¶ 4 |
| 22. **Controverted.** Defendants destroyed the account records after they had notice of the litigation according to their document retention policy | Deaton Declaration ¶ 11; Declaration of Arnold Phillips ¶ 4 |
| 23. **Controverted.** Defendants destroyed the account records after they had notice of the litigation according to their document retention policy **Controverted.** Plaintiff controverts this statement the error amount grew to be the charged off amount. The ongoing current charges were paid on the card after the error occurred. | Deaton Declaration ¶ 11; Declaration of Arnold Phillips ¶ 4 |
| 24. **Controverted.** Plaintiff controverts this statement the error amount grew to be the charged off amount. The ongoing current charges were paid on the card after the error occurred. | Deaton Declaration 10 |
| 25. **Controverted.** Plaintiff controverts this statement the error amount grew to be the charged off amount. The ongoing current charges were paid on the card after the error occurred. Further the best evidence of this was the account file which the Defendants destroyed. | Deaton Declaration ¶ 10 |

| | |
|---|---|
| 26. **Controverted** Plaintiff adequately notified the consumer reporting agency [there is no entity "credit reporting agency"] of her dispute of the erroneous credit information which the Defendants were publishing about her credit history | Plaintiff's Concise Statement filed June 10, 2002.¶ 12 |
| 27. **Controverted.** The source document does not state the Defendants Concise Statement | Trial Transcript 4/18/03 |
| 28. **Controverted** There can be no accurate source which states that the "Bank correctly confirmed that the account has been written off". The act of writing off the error made by the Defendants would never be a correct or accurate statement | Exh C Trial Transcript 4/18/03 p. 20 – 21 |
| 29. **Accepted.** without regard to their position that the statement of a charge off was correct for nine years the Bank deleted this statement for two credit report companies | Exhibit B, Trial Transcript 4/18/03 p. 23 – 25 |
| 30. **Controverted.** The source document does not support its use as evidence of any contested fact in the litigation. | Trial Testimony 4/21/03 p. 58 |

### Plaintiff's Concise Statement of Material Facts in Opposition

| FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. Plaintiff first notified Defendant Chevy Chase of the erroneous charges on January 21, 1994. Over the next five years, Plaintiff repeatedly contacted Defendant Chevy Chase via letters, telephone calls, and facsimile, attempting to get the erroneous charges removed from her account. | Deaton Decl. ¶ 6, 7, 8 dated June 9, 2006; Plaintiff's Separate Concise Statement filed June 10, 2002 ¶ 6; Pltf. Ex. 4, Bates # 38, 41, 51, 54, 56-57, 64, 69. |
| 2. Plaintiff first notified Defendant Chevy Chase of the erroneous charges on January 21, 1994. Over the next five years, Plaintiff repeatedly contacted Defendant Chevy Chase via letters, telephone calls, and facsimile, attempting to get the erroneous charges removed from her account. | Deaton Decl. ¶ 6; 7, 8 dated June 9, 006; Plaintiff's Separate Concise Statement filed June 10, 2002 Pltf. Ex. 4, Bates # 38, 41, 51, 54, |

| | |
|---|---|
| | 56-57, 64, 69. |
| 3. On April 16, 1998, Defendant Chevy Chase sent Plaintiff a letter requesting more time to research her complaint. | Plaintiff's Separate Concise Statement filed June 10, 2002 Pltf. Ex. 5, Bates # 39. |
| 4. Over the course of the five years that Plaintiff attempted to resolve her dispute with Defendant Chevy Chase, the amount due on her account grew from the $1902 in disputed charges to $7404.31, due to interest and late charges. | Deaton Decl. ¶ 10 dated June 9, 2006; Plaintiff's Separate Concise Statement filed June 10, 2002 ¶ 7; |
| 5. On August 5, 1999, Plaintiff telephoned the Credit Bureau of the Pacific (CBP) regarding her Chevy Chase, now First USA account. The next day she sent via facsimile documents regarding her dispute over this account to CBP. On August 16, 1999, she wrote a letter regarding her dispute to CBP. | Deaton Decl. ¶ 6, 7, 8, and 11 dated June 9, 2006; Plaintiff's Separate Concise Statement filed June 10, 2002 ¶ 11; Banks Concise Statement Def. Ex. B Bates # 94, 95, 97. |
| 6. Plaintiff applied for and used the Defendants' credit card as permitted and encouraged by the Defendants. She never received any notification that any user on the card was unauthorized | Deaton Decl. ¶ 3, 4, 5 dated June 9, 2006 |
| 7. The Defendants have never challenged the evidence which Plaintiff obtained from the relevant merchants to show that the overcharges were the mistakes of the banks | Deaton Decl. ¶ 7 and 8 dated June 9, 2006 |
| 8. Plaintiff statutory damages, economic damage, aggravation, distress, fear, anxiety emotional and mental distress including not being able to purchase real estate | Deaton Decl. ¶ 9 and 10 dated June 9, 2006 |

| | |
|---|---|
| 9. The Defendants knew of this lawsuit and destroyed the account records | Deaton Decl. ¶ 11 and 13 dated June 9, 2006 |
| 10. The amount of the Defendants' errors with the interest and other penalty fees is $7,404.31 | Deaton Decl. ¶ 12 dated June 9, 2006 |
| 11. In 2002 the Defendants still reported the error as a correct statement on my credit reports | Deaton Decl. ¶13 dated June 9, 2006 |

DATED:   Honolulu, Hawaii June 12, 2006.

_____
Arnold T. Phillips II
Attorney for Plaintiff
LINDA D. DEATON