ARNOLD T. PHILLIPS II #6640
1188 Bishop Street, Suite 3003
Honolulu, Hawaii 96813
Telephone: 808-528-3911 Fax: 808-528-5006
ATP@atphillips.com

Attorney for Plaintiff
LINDA D. DEATON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA D. DEATON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CHEVY CHASE BANK, a corporation, BANK ONE, a corporation, and JANE DOES 1-10 and JOHN DOES 1-10, DOE CORPORATION 1-10, and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>　　　　Defendants. | CIVIL NO. CV01-00352 SPK/BMK<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT; and CERTIFICATE OF SERVICE<br><br>Date: June 31, 2006<br>Time: 10:00 a.m.<br>Judge: Honorable Samuel P. King<br><br>Trial Date: May 1, 2007 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT**

I.　　**INTRODUCTION**

　　Because the Defendants are making the same or similar arguments and requests for relief which it made in previous dispository motions filed in this

action the Plaintiff draws heavily on the record of these prior dispository motions for her response to this summary judgment motion.

Plaintiff LINDA D. DEATON is a consumer who held a credit card account issued by Defendant CHEVY CHASE BANK, which was later transferred to Defendant BANK ONE. (See Def. CS ¶¶ 1, 3, 4, 19. filed on May 1, 2002 as part of Defendants' Concise Statement of Facts In Support of Motion For Summary Judgment [hereafter "Banks Concise Statement"] and Plaintiff's Separate Concise Statement of Material Facts In Opposition To Defendant Chevy Chase and Defendant Bank One's Joint Motion For Summary Judgment Declaration of Linda Deaton ¶ 1, filed on June 12, 2006)

On or about November 1993, Plaintiff placed three charges on the card: 1) $447.50 to the Maui Intercontinental Resort; 2) $20.00 to Amerivox; and 3) $8.00 to Budget Rent-A-Car. These charges appeared on Plaintiff's December 1993 credit card account statement, which she paid. (Plaintiff's Separate Concise Statement of Material Facts In Opposition To Defendant Chevy Chase and Defendant Bank One's Joint Motion For Summary Judgment ¶ 3, filed on June 10, 2002 [hereafter "Deaton Concise Statement"]) On her January 1994 account statement, these charges appeared again, times four. Thus, there were four additional charges for $447.50 to the Maui Intercontinental Resort, four additional

2

charges for $20.00 to Amerivox, and four additional charges for $8.00 to Budget Rent-A-Car, for a total of $1902 in erroneous charges. (Pltf. CS ¶ 4 filed on June 10, 2002, as part of Deaton Concise Statement )

All three of these businesses confirmed to Plaintiff that the additional charges were not correct, that they did not place the charges on Plaintiff's account, that Defendant Chevy Chase never gave them any credit for these charges, and that Defendant Chevy Chase caused those charges to be placed on Plaintiff's account. (Plft. CS ¶ 5 filed on June 10, 2002, as part of Deaton Concise Statement)

Plaintiff, first, notified Defendant Chevy Chase of the erroneous charges on January 21, 1994. Over the next five years, Plaintiff repeatedly contacted Defendants via letters, telephone calls, and facsimile, attempting to get the erroneous charges removed from her account. (Pltf. CS ¶ 6 filed on June 10, 2002, as part of Deaton Concise Statement and Plaintiff's Separate Concise Statement of Material Facts In Opposition To Defendant Chevy Chase and Defendant Bank One's Joint Motion For Summary Judgment Declaration of Linda Deaton ¶ 6, 7, 8 filed on June 12, 2006.)

Over the course of these five years, the amount due on Plaintiff's account grew from the $1902 in disputed charges to $7404.31, due to interest and

late charges. (Pltf. CS ¶ 8 filed on June 10, 2002, as part of Deaton Concise Statement.)

On April 16, 1998, Defendant Chevy Chase wrote to Plaintiff acknowledging her dispute and asking for more time to investigate it. (Pltf. CS ¶ 7 filed on June 10, 2002, as part of Deaton Concise Statement) Defendants, however, never corrected Plaintiff's account. Instead, they engaged Patenaude & Felix (Patenaude) to collect the "debt" from Plaintiff. Sometime thereafter, Defendants charged off Plaintiff's account. (Pltf. CS ¶ 9 filed on June 10, 2002, as part of Deaton Concise Statement)

On December 23, 1998, Patenaude sent Plaintiff a letter attempting to collect the $7404.31 debt. Plaintiff sent Patenaude all of her documentation regarding the erroneous charges. Patenaude took no legal action against Plaintiff regarding this alleged debt and eventually dropped its collection efforts. (Pltf. CS ¶ 10 filed on June 10, 2002, as part of Deaton Concise Statement.)[1]

On August 5, 1999, Plaintiff telephoned the Credit Bureau of the Pacific (CBP) regarding her Chevy Chase, now First USA account. The next day

---

[1] Plaintiff filed an action in May 2000 against Patenaude for violating the Fair Debt Collection Practices Act. She settled this action in her favor in November 2000. (Pltf. CS ¶ 11 filed on June 10, 2002, as part of Deaton Concise Statement.)

she sent documents via facsimile to CBP regarding her dispute over this account. On August 16, 1999, she wrote a letter to CBP regarding her account. (Pltf. CS ¶¶ 12, 13 filed on June 10, 2002, as part of Deaton Concise Statement.)

On October 11, 1999, CBP sent Plaintiff a letter stating: "We have re-investigated the account(s) in question and have sent an updated supplement report to Mid Pacific MTG - Ward to expedite the matter. Enclosed please find a copy of your updated Consumer Disclosure together with a copy of the supplemental report for your review." (Def. CS ¶¶ 8, 9 filed on May 1, 2002, as part of Banks Concise Statement.)

The CBP supplement report indicates, *inter alia*, a First USA Bank account number 541527052981 with the notation: "SETTLEMENT ACCEPTED ON THIS ACCOUNT[.] DUE TO NO RESPONSE, ACCT WILL BE DELETED FROM INFILE[.]" This report also shows that this account had been 90 days or more delinquent throughout the period November 1995 to November 1996. (Pltf. CS ¶ 14 filed on June 10, 2002, as part of Deaton Concise Statement) The Consumer Disclosure indicates a First USA Bank account number 5407301005915194, with the notation: "CHARGED OFF ACCOUNT." (Pltf. CS ¶ 15 filed on June 10, 2002, as part of Deaton Concise Statement)

On May 25, 2001, Plaintiff filed the instant action, alleging that Defendants violated 15 U.S.C. section 1681s-2(b) by failing to properly investigate Plaintiff's dispute.

After being contacted by the Defendants in early June 2001 notifying Plaintiff that the Defendants were aware of the instant law suit being filed counsel for the Plaintiff provided a copy of the complaint to Defendants and received a response that the complaint had been received by the Defendants on June 26, 2001. (See the Declaration of Arnold Phillips ¶ 4 )

On January 27, 2002, Plaintiff wrote letters to three other consumer reporting agencies--Equifax, TransUnion, and Experian--notifying them of her dispute over the information in her consumer files regarding her account with Defendants. On February 26, 2002, Equifax reported to Plaintiff "the results of your request for Equifax to reinvestigate" the information in her consumer filed regarding her account with Defendants. Equifax reported that "THIS CREDITOR HAS VERIFIED TO EQUIFAX THAT THE BALANCE IS BEING REPORTED CORRECTLY." The balance "being reported correctly" was a First USA Bank credit card account number "540730100591*," which was "CHARGED OFF."

On February 11, 2002, TransUnion wrote to Plaintiff informing her that it had "RECEIVED [HER] REQUEST ON 02/06/02 AND ARE

CURRENTLY INVESTIGATING THE INFORMATION WHICH YOU DISPUTED OR QUESTIONED. WE WILL CONTACT THE PARTIES WHO REPORTED THE INFORMATION AND ASK THEM TO VERIFY ITS ACCURACY. THEY WILL RESEARCH THEIR RECORDS AND ADVISE TRANS UNION OF ANY CHANGES THAT ARE NECESSARY."

On March 5, 2002, TransUnion reported to Plaintiff that it "completed our reinvestigation and the results are" that the information in Plaintiff's consumer file regarding her account with Defendant was "VERIFIED, NO CHANGE." The "verified" information was a Chevy Chase credit card account number 5407301005915194, which was "CHARGED OFF AS BAD DEBT."

The Defendants in their memorandum in support of its motion for summary judgment filed on May 1, 2002, have conceded that Plaintiff adequately invoked section 1681s-2(b) when she contacted Equifax, TransUnion, and Experian -"Based on Plaintiff's entire production of documents and discovery responses, **the only valid notice pursuant to that statute was made at the beginning of this year (2002)[.]**" (emphasis added).and further "Eight months after Plaintiff filed the Complaint herein, she initiated **apparently adequate notice to three national consumer reporting agencies** and received from only two of them that reinvestigation confirmed that the disputed items apparently still

7

remained on her credit reports, as of February 26, 2002, and March 5, 2002." (C.S. ¶ 16-17 Banks Concise Statement filed May 1, 2002) (emphasis added). And further "... the belated attempt to give substance to her claim long..., satisfy the notice requirements for imposing liability on a furnisher of information." (at page 9 of Defendant Chevy Chase Bank's and Defendant Bank One's Joint Motion For Summary Judgment filed May 1, 2002 (emphasis added).

This matter proceeded to trial resulting in a Defendants' verdict and after a successful appeal is again before this Court for further proceeding on Plaintiff's claims of 1994 – 1999 and 2002 violations of the Fair Credit Reporting Act (FCRA).

## II.     STANDARD FOR RULING ON A MOTION FOR SUMMARY JUDGMENT

In *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000), the Ninth Circuit held:

"A moving party without the ultimate burden of persuasion at trial--usually, but not always, a defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and*

*Procedure* § 2727 (3d ed. 1998). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. *See id.* ... *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. *See id.* at 1102-03.

Under *Adickes* and *Celotex*, a moving party without the ultimate burden of persuasion at trial thus may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may

9

show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. *Id.* at 1105-06

Here, Plaintiff establishes by more than sufficient evidence an issue of material fact as to whether she fulfilled any requirement of filing a complaint to bring a cause of action under 15 U.S.C. 1681 *et seq.* to recover actual and statutory damages.

### III.  ARGUMENT

<u>Summary</u> - The Defendants argue that Plaintiff cannot show any triggering of the FRCA in 1999 and the 2002, that Plaintiff cannot show that Section 1681s-2(b) was not complied with, that she was not damaged, raise a claim of contributory negligence and again submit that a failure to comply with the Fair Billing Practices Act would bar any recovery under the Fair Credit Reporting Act.

<u>Triggering of FRCA</u> - Plaintiff's response is that 15 U.S.C. section 1681s-2(b) of the Fair Credit Reporting Act (FRCA) provides consumers with a private right of action again furnishers of credit information. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002). The statute provides as follows:

(b) Duties of furnishers of information upon notice of dispute

10

(1) In general **After receiving notice pursuant to section 1681i(a)(2) of this title** of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.      15 U.S.C. § 1681s-2(b)(1) (emphases added).

    Section 1681i(a) of the FRCA provides as follows:

(a) Reinvestigations of disputed information

(1) Reinvestigation required.--

(A) In general.--If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

. . .(2) Prompt notice of dispute to furnisher of information.--

11

(A) In general.--Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), **the agency shall provide notification of the dispute to any person who provided any item of information in dispute**, at the address and in the manner established with the person. **The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.**

. . .

(6) Notice of results of reinvestigation.--

(A) In general.--**A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation** under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.   15 U.S.C. §§ 1681i(a)(1), (2), (6) (emphases added).

      Together, these statutes provide the following framework:

1.      The consumer directly notifies a consumer reporting agency of a dispute with regard to information provided by a furnisher of information to the consumer reporting agency;

2.      The consumer reporting agency then notifies the furnisher of the information of the dispute and provides the furnisher all relevant information it received from the consumer;

3.	The furnisher investigates the dispute and reviews the information that the consumer reporting agency sent;

4.	The furnisher then notifies the consumer reporting agency of the results of its investigation;

5.	The consumer reporting agency notifies the consumer of the result of the investigation.

Here, Plaintiff's evidence proves that she meets all of the criteria for her claim that Defendants violated section 1681s-2(b). Plaintiff has produced sufficient evidence to prove that she notified a consumer reporting agency of her dispute regarding the information that the Defendants, in response, reported to the agency their position on the dispute and that Plaintiff received a return communication from the consumer reporting agency which showed a failure to investigate because they did not apparently review any files on Plaintiff from 1994 or from Patenaude lawsuit, or at least to raise a genuine issue of fact on this issue.

When the Defendants argue that "Plaintiff Cannot Show that She Triggered Any FRCA Inquiry in 1999 ..." they ignore that the Credit Bureau of the Pacific replied to Plaintiff in its communication of October 11, 1999, showing an investigation and no change.

13

This evidence raises a materials issue of fact as to whether the FRCA was triggered by the notification of Ms. Deaton to Credit Bureau of Pacific that she disputed an item of information contained in her file with the consumer reporting agency. Despite any contradictory testimony Plaintiff has produced ample evidence that she directly notified CBP of a dispute regarding the information on her account with Defendants and received back a response which indicated that there was an investigation - observation or study by close examination, systematic inquiry, conduct an official inquiry.

Plaintiff telephoned CBP on August 5, 1999 regarding her dispute over the information on her account with Defendants. The next day she sent various materials to CBP via facsimile regarding the dispute and her attempts to get Defendants to remedy the problem. On August 16, 1999, she wrote a letter to CBP regarding this matter. (Pltf. Separate Concise Statement filed June 10, 2002 CS ¶ 12.) There are pertinent pages of her personal diary, which indicate that she drafted a letter to CBP on or around August 16, 1999. (Pltf. Separate Concise Statement filed June 10, 2002 CS ¶ 13.)

Moreover, there can be little doubt that Plaintiff notified CBP directly of her dispute. Section 1681i(a) is entitled "Reinvestigations of disputed information." 15 U.S.C. § 1681i(a). CBP's October 11, 1999, letter to Plaintiff

indicates that it **"re-investigated the account(s) in question."** (Def. CS ¶ 8 filed on May 1, 2002 as part of Defendants' Concise Statement of Facts In Support of Motion For Summary Judgment) (emphasis added).

Furthermore, without considering the 1994 – 1999 errors Defendants admit Plaintiff gave adequate notices pursuant to section 1681i to three other credit reporting agencies of her dispute over Defendants' account in 2002. And there is no dispute regarding the existence of these violations. Defendants do not want them to count because after the violations they corrected their errors. (Memo. in Supp. of Mot. at 8-9, Defendant Chevy Chase Bank's and Bank One's Motion for Summary Judgment, filed May 1, 2002.)

As Plaintiff stated in her response to the summary judgment motion in 2002 " Defendants are correct that Plaintiff notified Equifax, TransUnion, and Experian on January 27, 2002, of her dispute. (Defs. CS ¶ 16.) Defendants are also correct that Equifax and TransUnion responded to Plaintiff's notices. Equifax reported that "THIS CREDITOR HAS VERIFED TO EQUIFAX THAT THE BALANCE IS BEING REPORTED CORRECTLY." TransUnion reported: "VERIFIED, NO CHANGE." (Pltf. CS ¶ 16.)"

On these violations Defendants actions removing the offending information from Plaintiff's consumer filed is irrelevant. The violation has been

15

committed - Defendants once again violated section 1681s-2 by not adequately investigating Plaintiff's dispute before verifying the "accuracy" of the information to at least two more consumer reporting agencies.

Contributory Negligence. Next Defendants argue that Plaintiff in some way caused the derogatory information on her credit report and therefore is barred by a theory of contributory negligence. There is no evidence that there was any unauthorized or other use of the card by Plaintiff or Mr. Hariri which violated any standard or procedure of the Defendants. To the contrary the use of the card was exactly as the Defendants desired and intended it to be used. (Plaintiff's Separate Concise Statement of Material Facts In Opposition To Defendant Chevy Chase and Defendant Bank One's Joint Motion For Summary Judgment Declaration of Linda Deaton ¶ 3, 4, 5, 6, 8, 13 filed on June 12, 2006.) All of the charges on the card and the account with the exception of the errors made by the Defendants were paid. (Plaintiff's Separate Concise Statement of Material Facts In Opposition To Defendant Chevy Chase and Defendant Bank One's Joint Motion For Summary Judgment Declaration of Linda Deaton ¶ 12 filed on June 12, 2006) There is no evidence the Plaintiff did not do everything that was possible to communicate to the Defendants regarding their error and seek their action to correct their error. The

materials which she provided to the Defendants regarding the source of the error have gone unchallenged by the Defendants.

The most astounding thing facts relating to a parties conduct is that the Defendants destroyed the best evidence of the action taken on the account when they destroyed the account records after they knew that the lawsuit had been filed. They picked up the law suit shortly after filing in May 2001 well within the record retention period but they destroyed the records barring any review of the source documents. The most preferred practice would have been to access and isolate all the account records at the first notification that litigation was pending. However, the Defendants now want the court to disregard any first notice and allow the Defendants to rely on the service date to excuse any destruction of the account records of the Plaintiff. Plaintiff's Separate Concise Statement of Material Facts In Opposition To Defendant Chevy Chase and Defendant Bank One's Joint Motion For Summary Judgment Declaration of Linda Deaton ¶ 11, 13 filed on June 12, 2006; Declaration of Arnold Phillips ¶ 4 filed June 12, 2006)

There is no support that is offered by the Defendants for their conclusion to this part of their argument -"Insofar as Ms. Deaton's own negligence was the cause of the derogatory reporting, her tort claim under the Fair Credit

17

Reporting Act should be dismissed". The Plaintiff could find no support and believes that the reason for this is that this is not a supportable position.

<u>Fair Billing Practices Act</u> Finally, the Defendant - again - urges on the Court a theory which bars the Plaintiff from relief under the Fair Credit Reporting Act unless she has met the requirements of the Fair Billing Practices Act. This argument has not been accepted by this Court nor by the Circuit Court. Plaintiff chose to proceed under Fair Credit Practices Act for failure of the Defendant to investigate incorrect, derogatory statements about the credit conduct of the Plaintiff. There is no challenge from the Defendants to the fact that it was their errors which created the situation. The plaintiff chose to proceed under FRCA and there is no law or authority creating or linking enforcement of a cause of action under FRCA with a cause of action under FBPA.

IV.    **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests this Honorable Court to deny Defendants' Joint Motion for Summary Judgment.

Respectfully Submitted,

_____
Arnold T. Phillips II
Attorney for the Plaintiff

18

ARNOLD THIELENS PHILLIPS II, ESQ.
1188 Bishop Street, Suite 3003
Honolulu, Hawaii 96813
Telephone: 528.3911
ATP@ATPhillips.com

Attorney for Plaintiff
Linda Deaton

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA D. DEATON, <br><br> Plaintiff, <br><br> vs. <br><br> CHEVY CHASE BANK, a corporation; BANK ONE, a corporation; JANE DOES 1-10 and JOHN DOES 1-10, DOE CORPORATION 1-10; and DOE GOVERNMENTAL ENTITIES 1-10 <br><br> Defendants. | CIVIL NO.01-00352 SPK-BMK <br><br> **CERTIFICATE OF SERVICE re:** <br><br> **PLAINTIFF'S MEMORANDUM ON OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT FILED HEREIN ON MARCH 17, 2006** <br><br> Trial Date: May 1, 2007 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2006, a copy of the pleading, PLAINTIFF'S MEMORANDUM ON OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY

1

JUDGMENT" FILED HEREIN ON MARCH 17, 2006 was duly served upon the following at their last known address by hand delivering to the following address:

Ms. Mary Martin, Esq.
Stanton Clay Chapman Crumpton & Iwamura
700 Bishop Street Ste 2100
Honolulu, HI 96813
       Attorneys for Defendants

DATED: Honolulu, Hawaii, June 12, 2006

_____
Arnold T. Phillips II
Attorney for the Plaintiff