Of Counsel:
CLAY CHAPMAN CRUMPTON IWAMURA & PULICE

ROBERT E. CHAPMAN          #2679
rchapman@paclawteam.com
MARY MARTIN                #5475
mmartin@paclawteam.com
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Telephone No.: (808) 535-8400
Facsimile No.: (808) 535-8444

Attorneys for Defendants
 CHEVY CHASE BANK and BANK ONE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA D. DEATON,<br><br>         Plaintiff,<br><br>    vs.<br><br>CHEVY CHASE BANK, a corporation, BANK ONE, a corporation and JANE DOES 1-10 and JOHN DOES 1-10, DOE CORPORATION 1-10, and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>         Defendants. | CIVIL NO. CV01-00352 SPK/BMK<br><br>DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT; DECLARATION OF MARY MARTIN; EXHIBITS "A" – "F"; CERTIFICATE OF SERVICE<br><br>Hrg Date: June 30, 2006<br>Hrg Time: 10:00 a.m.<br>Judge:   Samuel P. King<br><br>Trial Date: May 1, 2007 |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CHEVY CHASE AND DEFENDANT BANK ONE'S JOINT MOTION FOR SUMMARY JUDGMENT**

COMES NOW DEFENDANTS CHEVY CHASE BANK and BANK ONE, by and through their attorneys, Clay Chapman Crumpton Iwamura & Pulice, and hereby reply to

Plaintiff's Opposition to the pending motion for summary judgment. The Opposition lacks merit, and fails to raise any genuine issue of material fact that was not, or could not, have been raised at the trial of this case. Instead, Plaintiff's Opposition argues the original case, as if there had been no trial. Indeed, the summary of Plaintiff's argument (p.10 of the Memorandum), speaks about whether Plaintiff "cannot" show triggering, etc.; the argument simply regurgitates arguments made before trial. The context of the pending motion is based "on the record" – specifically the trial record, over which this court, and this Honorable Judge, presided. In other words, the pending Motion asks this court to find that Plaintiff did not show, at trial, the points argued in the motion, and therefore, that she cannot prove them; she had the opportunity to present her case, to prove her right to a remedy – she simply did not do it, even though it was her burden of proof to do so. On Plaintiff's record, her case fails.

In opposition to Defendants' motion for summary judgment on the record, the only efforts made at raising any genuine factual issues are Plaintiff's[1] counsel's own declaration purporting to demonstrate that

---

[1] Defendants will presume that Plaintiff's counsel does not now intend to convert himself into a witness.

Defendants "destroyed evidence" even though they knew of the litigation, Plaintiff's affidavit purporting to argue that she was never informed that Kamran Hariri should not have had use of her credit card, and Plaintiff's self-inflicted impeachment of her own admissions.

**DISCUSSION OF PLAINTIFF'S 'QUESTIONS OF FACT'**

    **1.   Purported Destruction of Evidence**

Even if Mr. Phillips' belated testimony were appropriately supported by the evidence required under Rule 56(e)[2], and were it true that he had been in touch with Defendants and provided a copy of the Complaint to them in June 2001, the fact is that Defendants recovered all available records, and as shown in Defendants' Trial Exhibit 209, those records included the billing cycle with transaction dates back to June 1994 - seven years prior to any possible knowledge Defendants had of the instant lawsuit[3] - even based on Mr. Phillips' belated testimony.

More interesting is the apparent argument of

---

[2] Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit shall be attached thereto. Mr. Phillips' declaration references a June 26, 2001 letter, which is not attached.

[3] This lawsuit was only filed on May 25, 2001. See record herein.

-3-

Plaintiff - that even though it is Plaintiff's burden of proof that the billing statement was never corrected, Plaintiff seeks to shift the burden of proof - i.e. making Defendants responsible for providing the billing statements, in order to ascertain whether or not they were corrected.[4] Making that argument is a tacit admission by Plaintiff that her failure to cure any purported billing error, by use of the Fair Credit Billing Act, is, in fact, a valid defense to this entire lawsuit.

2. **Plaintiff's Contributory Negligence**

Ms. Deaton's efforts - to immunize herself from problems associated with having allowed Kamran Hariri unfettered use of a credit card for whom she was the only responsible party, by saying Defendants never told her his use was restricted - are irrelevant, as no such argument has ever been made. Defendants' allegation is that Ms. Deaton was negligent in allowing him that

---

[4] Ms. Deaton's Affidavit (¶11) purports to ascribe knowledge to these defendants via the "Patenaude" litigation. That litigation, for which this court can clearly take judicial notice, is actually <u>Deaton v. Patenaude, et al.</u>, Civ. 00-0358 SOM/BMK, U.S. District Court for the District of Hawaii. Defendants Chevy Chase and Bank One were not parties to that action, nor did they appear in any manner. Therefore ascribing knowledge to them of any claim herein, as a result of that lawsuit, is disingenuous and inappropriate.

unfettered use, and any resulting problems - including the purported 'non-correction' of the 1993 alleged billing error - were therefore the result of her contributory negligence. Defendants' arguments were generally (but not solely) pointed towards the fact that all of the statement were sent to Hariri, but by making the statements she now makes, Plaintiff has opened the door to the evidence which Defendants sought to bring to trial.[5]

Specifically, Ms. Deaton knew, at least in October 1993, that there was a Judgment against Mr. Hariri in excess of $1,000,000. She knew that because she was subpoenaed for "examination of a person having knowledge of the financial affairs or property of a judgment debtor," as his girlfriend, with potential knowledge of his financial matters; attached to the subpoena served on Ms. Deaton was information identifying the judgment against Mr. Hariri.[6] According

---

[5] The court refused the testimony on the basis that it would be embarrassing - the fact of the matter is that being negligent is embarrassing, especially when an educated person makes mistakes of judgment that are related to their own professional field of endeavor. See Trans. 4/16/03, p. 125-129, attached hereto as Exhibit B.

[6] See documents attached as Exhibits C & D. This court is requested to take judicial notice of the pleadings of the

-5-

to court records, Ms. Deaton did appear in response to the subpoena, and was sworn for the examination.[7]

Common sense should lead one to understand that it would be poor judgment to let such a person have unfettered and unmonitored use of your credit card. Further, Ms. Deaton is a CPA, and presumably had an understanding of the potential abuse that could occur. Therefore, if this court agrees to take into account her new testimony, as it was never given during trial, then this court should likewise take into account the evidence, supported by documents, which disprove Ms. Deaton's trial testimony that she "didn't recall" having been questioned as to Mr. Hariri's assets in October 1993, or whether she had any "personal knowledge" of the judgment against him. See Exhibit B. The court refused the testimony as it ruled that it would be embarrassing – but that's not adequate reason to preclude evidence that a Plaintiff has been so patently negligent as to allow a judgment debtor unfettered and uncontrolled use

---

First Circuit Court, State of Hawaii, in Romero v. Hariri, Civ. 90-0920, which was affirmed on appeal, Romero v. Hariri, 911 P.2d 85, 80 Haw. 450 (1996).

[7]See Exhibit E, attached hereto.

of her credit card.[8]

### 3. Self-Impeachment by Deaton

Having already been impeached at trial by her own testimony which conflicted with her own sworn interrogatory responses (see Defendants' Concise Statement, ¶8 and exhibit A attached thereto), Ms. Deaton again seeks to contradict her own chronology of purported efforts to correct the billing. She now alleges that she was in constant contact from the date of the allegedly uncorrected error in 1994, to the filing of the lawsuit (in 2001). Either that is a lie, or her interrogatory responses were a lie, as they do not indicate any communication, telephone calls, or letters, etc., between early 1994 and 1998. When a party's testimony has been impeached, this court may give it the credibility or weight that it deserves. In this case, Ms. Deaton's credibility is seriously in question, and should be given little, if any, weight.

### 4. Defendants' Response to Plaintiff's Separate

---

[8] This court is asked to take judicial notice of the Hawaii Intermediate Court of Appeals ruling affirming the judgment against Mr. Hariri. It is not, however, available on Ho'ohiki, as the case predates the cases posted on the website. It can be located and reviewed by a "google" search for "Kamran Hariri."

**Concise Statement**

Plaintiff's Response to Defendants' Concise Statement in support of the pending motion contains some non-responsive, or incorrect entries, as follows:

- Plaintiff "controverts" ¶6 by stating she had no obligation to bring an FCBA claim. That is not responsive to ¶6 - the fact is she did not have the billing statements during the period it would have been corrected - it was her burden to prove it was not corrected, and she did not bring an FCBA claim.
- In ¶7, Plaintiff disputes the use of the word "insistence" - in fact, she testified that it was his "decision" to keep the card.
- In ¶8, the trial transcript supports Defendants' position that Ms. Deaton made no telephone call during the 1994 to 1998 period.
- In ¶9, Deaton contests whether the statements were sent to herself and to Hariri, but she admitted at trial that the address on the statements was his P.O. Box. See Exh. F.
- In ¶12, Deaton's responsive is non-responsive - the "fact" refers to events in 1998, her attempt to controvert the fact refers to 1999.

-8-

- In ¶14, her own reference (p. 16 of transcript) does the oppositve of what she states.
- In ¶15, Plaintiff purports to testify as to what the mortgage company received - since she never subpoenaed documents, or obtained any evidentiary proof or foundation, the statement is absurd.  Further, the credit report identified as having been sent to the lender did not have information as to these defendants.  The source referenced omits the following page of testimony, i.e. Tr. 4/17/03, p. 11-12 (not just p.11).
- ¶16 questions the use of "derogatory", but Trial Exh. 18 (Deaton's exhibit) defines "derogatory" as "negative."  Further, a debt of a $63,000 mortgage appears to be more significant that an unpaid charge card.
- Deaton's declaration, as to ¶17, was that the loan was not feasible, rather than she could not afford it.  However, she never raised this issue in trial.
- Paragraphs 18, 20, 21, 23 (in part), and 25 fail to take notice of the actual documents produced by Defendants, in Exh. 209 (see Exh.

A, attached hereto).

- The response to ¶22 and ¶23 (in part), are simply not responsive to the statements.
- Plaintiff's position as to ¶24, that ongoing current charge were paid, is wrong, as shown by the summary of payments demonstrated in Defendants' trial exhibit 224.
- Whether Plaintiff notified the consumer reporting agencies (¶26) is only part of the burden for a claim under the FCRA. If the consumer reporting agency never reported the information to the furnishers of information, then there is no liability under the FCRA. The records which Ms. Deaton sought from the consumer reporting agencies (trial exhibits 103 (Transunion) and 104 (Equifax)) had no indication of following up on FCRA requirements in 1999. As Ms. Deaton's counsel identified Equifax as the national contact for a reinvestigation initiated through the Credit Bureau of the Pacific, it is clear that the 1999 claim fails, in its entirety.
- Plaintiff's ¶27 response is unintelligible.
- Plaintiff's ¶28 response is ignorant - the fact

was that the account had been written off. Whether Deaton thinks it should have been is irrelevant - the 2002 inquiry asked the status - it had been written off, the bank reported to the CRA that it had been written off.

Plaintiff's own Opposing Statement of Facts is no more helpful, as follows:

- Facts 1 and 2 are identical, but see ¶8, above - Ms. Deaton has no record of communications from 1994 to 1998, including by telephone.
- Fact 3 is irrelevant.
- Facts 4 and 10 are wrong as to her "attempt over five years", and unsupported as to the claim that $1902 grew to $7404.31.
- Fact 5, as noted in comments above re ¶26, is irrelevant - it is what CBP did, or did not do, that counts. It did NOT notify either Defendant in 1999 of a reinvestigation.
- Facts 6 and 7 are irrelevant.
- Fact 8 is precluded by motions in limine prior to trial, which motions were not the subject of appeal or remand.
- Fact 9 is unsupport, as shown above.
- Fact 11 is contradicted by the acceptance of

Defendants' ¶29.

In summary, Plaintiff's efforts to raise a question of fact lack merit; there is no support for her claim.

**CONCLUSION**

For those reasons, Defendants respectfully request that the motion for summary judgment, as supported by all of the trial testimony, be granted, and that this case be dismissed for the following reasons: lack of proof of triggering the FCRA, lack of proof of any error on the billing statements (an obvious requirement for there to be an error on the credit report), and lack of proof of any damages, Ms. Deaton's contributory negligence. Further, this court is asked for a ruling that Ms. Deaton's failure to exercise her remedies under the Fair Credit Billing Act preclude her claim, years later, that a purported uncorrected error could give rise to a claim under the Fair Credit Reporting Act.

DATED: Honolulu, Hawaii, June 19, 2006.

_____
ROBERT E. CHAPMAN
MARY MARTIN
Attorneys for Defendants