1  Q    Which -- who was actually using the credit card in 1993?
2  A    Kamran. Kamran used it most --
3           THE COURT: That always confuses me because you only
4  had one card?
5           THE WITNESS: I had another card I used for a lot of
6  personal things.
7           THE COURT: But I mean on this same account.
8           THE WITNESS: This -- only one card for this same
9  account, that's -- I at one time probably had a card, but I
10 don't know when I put it away.
11          THE COURT: You never used it?
12          THE WITNESS: Very seldom.
13          THE COURT: But there was another card on the same
14 account?
15          THE WITNESS: Yes.
16          THE COURT: One to you and one to --
17          THE WITNESS: Yes.
18          THE COURT: -- Hariri?
19          THE WITNESS: Yes.
20 BY MS. MARTIN:
21 Q    Well, you were the responsible party on the account;
22 isn't that correct?
23 A    That's right, and I reviewed the statements.
24 Q    Did you hear your counsel identify Mr. Hariri as a friend
25 and associate during the opening statement yesterday?

1   A   Yes.

2   Q   You have also on occasion identified him as an investor,
3   correct?

4   A   Correct.

5   Q   And isn't it actually true that you were having a
6   romantic relationship with him?

7   A   Yes, I -- yes, ma'am.

8   Q   And isn't it actually true that the two of you did live
9   together for a while?

10  A   Yes, ma'am.

11  Q   And while you were living together you were paying the
12  rent, correct?

13  A   No, ma'am.

14  Q   Your testimony is that you were not paying the rent?

15  A   My testimony -- I'm confused, Ms. Martin.

16  Q   The question is:  Isn't it true that while you were
17  living together with Mr. Hariri, you were paying the rent?

18          MR. PHILLIPS:  Well, Your Honor, I'm going to object
19  to what relevance who paid the rent when they lived together
20  in 1990 would have to do with the issues in this case.

21          MS. MARTIN:  Your Honor, there is a large amount of
22  question as to why Ms. Deaton allowed Mr. Hariri to have this
23  credit card on his own --

24          THE COURT:  So what?

25          MS. MARTIN:  -- and the basis and the background of

1   how that came about.
2          THE COURT:  I think he's right.  I'll sustain the
3   objection.
4   BY MS. MARTIN:
5   Q    At your deposition you stated that you didn't even know
6   if Mr. Hariri was wealthy, correct?
7          MR. PHILLIPS:  Your Honor, I'm going to object to
8   this.  What Mr. Hariri's wealth has to do with this case is
9   not any matter that's material and --
10         THE COURT:  Right.
11         MS. MARTIN:  Your Honor, it is very material to this
12  case because part of the claim in this case is whether there
13  was any negligence on the part of my clients.  And as a
14  response to a claim of negligence, either a failure to
15  mitigate damages or a claim of contributory negligence is a
16  very appropriate and legal defense to a claim of negligence.
17         THE COURT:  May be so, but, you know, where you're
18  going doesn't sound to me like it's doing anything except
19  embarrassing her.
20         MS. MARTIN:  We will -- that may be -- that may be
21  the case, Your Honor.  That may be exactly the case, but the
22  fact of the matter is that Ms. Deaton allowed Mr. Hariri, who
23  was a judgment debtor, to have a credit card.
24         MR. PHILLIPS:  Your Honor, this --
25         THE COURT:  So what?  So what?

1     MS. MARTIN:  That was negligent, Your Honor.  It was
2  extremely negligent.  She gave him a credit card, he had a
3  million-dollar judgment against him --
4     THE COURT:  I'll sustain the objection.
5     MR. PHILLIPS:  Thank you, Your Honor.
6     THE COURT:  Ask your questions.
7  BY MS. MARTIN:
8  Q    You were aware of Mr. Hariri's million-dollar judgment,
9  though, weren't you, Ms. Deaton?
10 A    I personally was not aware of it.
11 Q    You were not?
12 A    I had no personal knowledge.
13     THE COURT:  Well, now, don't go spending too much
14 time over that.
15     MS. MARTIN:  I would just like to offer --
16     MR. PHILLIPS:  Your Honor, I'm going to object to
17 anything further.  This witness says she has no personal
18 knowledge.
19     MS. MARTIN:  I only want to give her something to
20 help her refresh her recollection, Your Honor.  I have
21 certified documents --
22     THE COURT:  No, I won't even let you ask the
23 question.  Whether she remembers it or doesn't remember it or
24 has documents as to whether he has a judgment against him and
25 for how much is totally irrelevant.

1   BY MS. MARTIN:

2   Q    Isn't it true, though, that, Ms. Deaton, in October of

3   1993, you were questioned as to Mr. Hariri's assets?

4   A    I don't recall that, no, ma'am.

5   Q    We can bring in the attorney to -- who questioned you.

6            MR. PHILLIPS:  Well, Your Honor, I'm going to

7   object to --

8            THE COURT:  That was an improper statement.  You want

9   to do that, go ahead and bring him in if he's -- if the

10  evidence is admissible.  I'll sustain the objection.

11  BY MS. MARTIN:

12  Q    The charges that were incurred in November 1993 at the

13  Maui Inter-Continental and through Budget and Amerivox were

14  all incurred by Mr. Hariri, correct?

15  A    Correct.

16  Q    And he was traveling with somebody else and signed in

17  under a Mr. and Mrs. Hariri; isn't that right?

18           THE COURT:  If you know.

19           THE WITNESS:  I really don't.

20           THE COURT:  You weren't there?

21           THE WITNESS:  I was not there.

22  BY MS. MARTIN:

23  Q    Well, Ms. Deaton, you have asked and had the court admit

24  into evidence Exhibit Number -- it's either -- don't have my

25  numbers well enough marked, but it's either --